ORIGINAL
FILED

07 JUL 16 PM 1:37

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

1  Teresa Demchak, CA Bar No. 123989
   Laura L. Ho, CA Bar No. 173179
2  GOLDSTEIN, DEMCHAK, BALLER,
     BORGEN & DARDARIAN
3  300 Lakeside Drive., Suite 1000
   Oakland, CA  94612
4  (510) 763-9800 (telephone)
   (510) 835-1417 (telefax)
5
6  Joseph M. Sellers
   Charles E. Tompkins
7  Llezlie L. Green
   COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC
8  1100 New York Avenue, N.W.
   Suite 500, West Tower
9  Washington, DC  20005
   (202) 408-4600 (telephone)
10 (202) 408-4699 (telefax)

11 Steven M. Pavsner
   Jay P. Holland
12 JOSEPH, GREENWALKD & LAAKE, P.A.
   6404 Ivy Lane, Suite 400
13 Greenbelt, MD  20770
   (301) 220-2200 (telephone)
14 (202) 220-1214 (telefax)

15 Attorneys for Plaintiffs

16               UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18

19 KENNITH CAMPBELL , RAYMOND ALVARADO,
   RUSSELL AUSTIN, DAVID BARRIOS, LEROY BOESE,
20 GEORGE BOHANNON, EDWIN BONDOC, GERVER
   CALDERON, ERNESTO CISNEROS, MITCHELL COBB,
21 DANIEL COHICK, JOSE COLOCHO, TERRY CROW,
   BRIAN DEAN, CECIL ELKINS, RAMON ESTRADA,
22 DAVID GEETING, GREGORY GOODWIN, EARNEST
   HARRELL, BILL HERNANDEZ, JOSE HERNANDEZ,
23 JOSEPH HUTTON, SR., ISAIAS LOPEZ, LUIS LOPEZ,
   JOHN MARTIN, MATTHEW MARTIN, LAURIN MCPHEE
24 JR., ASON MINGUS, RANFERI MIRANDA TERAN,
   PATRICK MOXLEY, TONY ORNELAS, MIKE PEACHEE,
25 RICARDO PEREZ, AMADOR PEREZ, ALFREDO PINEDA,
   KEVIN PRICE, ALBERTO REYES, MICHAEL SCHILLING,
26 MARCO SOLORZANO, JASON TAYLOR, KENNETH
   TERRY, ARMANDO TORREZ, THOMAS VISAGE,
27 ROBERT WHITE,  MICHAEL WOODS, DAMIAN
   ZENTNER, LUIS  ZERMENO,
28

07  3640

MEJ

Case No.

COMPLAINT

JURY TRIAL DEMANDED

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

COMPLAINT

Case No.

1              Plaintiffs,

2    v.

3    APARTMENT INVESTMENT AND MANAGEMENT
     COMPANY, AIMCO PROPERTIES, L.P. and NHP
4    MANAGEMENT, INC.,

5              Defendants.

6

7                    **SUMMARY OF ALLEGATIONS**[1]

8         1.      Defendants Apartment Investment Management Company ("The Company"),

9    AIMCO Properties, L.P. ("AIMCO") and NHP Management, Inc. ("NHP") (collectively,

10   "Defendants"), beginning in at least the year 1999 and continuing until the present, have

11   willfully violated federal law and applicable state laws by refusing to pay Plaintiffs, as well as
12
     everyone else employed by Defendants as hourly-paid "Service Technicians"; "Maintenance
13
     Supervisors" and "Service Managers," for all of the hours they work, and by refusing to pay
14
15   overtime for all hours worked over forty (40) hours per week.

16        2.      This denial of legally required overtime pay has been accomplished through two

17   separate practices, implemented throughout California.

18        3.      First, AIMCO requires that employees who work overtime take "compensatory
19
     time" on future scheduled workdays rather than be paid overtime. AIMCO implemented this
20
     compensatory-time off policy while simultaneously setting staffing levels at its apartment
21
22   communities at such low levels that, as a practical matter, employees are wholly unable to take

23   off the "compensatory time" that they are owed. The predictable – and intended – result is that

24   AIMCO's Service Technicians, Maintenance Supervisors, and Service Managers are not paid

25
     ------
26   [1]    An identical action brought on behalf of Joseph Dominguez and Aldo Cruz is
     present before this Court (*Dominguez v. AIMCO*, Civ. No. 07-cv-03245). The defendants have
27   indicated they would oppose a motion to amend *Dominguez v. AIMCO* to include the additional
     plaintiffs. As such, the plaintiffs file this separate complaint, in an abundance of caution, in
28   order to preserve the claims of the plaintiffs listed herein.

1   overtime compensation when they work more than eight hours a day or forty (40) hours a week,

2   nor do they receive the compensatory time promised them.

3       4.      Second, AIMCO refuses to pay employees who are "on call" at its apartment

4   communities for the time they spend waiting for calls.  These employees must be available

5   twenty-four (24) hours a day to respond to emergency requests for services from tenants, and

6   must arrive at tenants' apartment between 5 and 20 minutes of tenants' requests for service.  In

7

8   many cases these employees' lives are severely restricted while they are on call.  Yet AIMCO

9   does not pay its employees for this waiting time.

10      5.      Both of these practices are knowing, willful, and intentional violations of The

11  Fair Labor Standards Act, 29 U.S.C. §§ 207 *et seq.* ("FLSA").

12                      **<u>JURISDICTION AND VENUE</u>**

13      6.      This Court has subject matter jurisdiction over the Claims for Relief I, II, and III

14  seeking relief for violations of the FLSA, pursuant to 28 U.S.C. § 1331.

15

16      7.      Defendants regularly transact business in this District and are therefore subject to

17  personal jurisdiction here.

18      8.      AIMCO and/or NHP own and operate apartment complexes in this District and

19  throughout the state of California.

20      9.      NHP and/or AIMCO also manage apartment communities and employ employees

21  in this District and throughout the state of California.  NHP was an employer of Plaintiffs in this

22  District and throughout the state of California.

23

24      10.     Upon information and belief, AIMCO was a joint employer, with NHP, of

25  Plaintiffs in this District and throughout the state of California.

26      11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c), because both

27  AIMCO and NHP are subject to personal jurisdiction in this District.  In addition, Plaintiffs were

28

1    employed at a facility owned and operated by AIMCO and/or NHP in this district, and were

2    employed by NHP and AIMCO in this district, such that the unlawful acts of which Plaintiffs

3    complain took place in this District and throughout the state of California.

4        12.    AIMCO and/or NHP also owns, operates and manages apartment facilities, and

5    employs employees in this District and throughout the state of California.

6    **PARTIES**

7        13.    The Company is a Maryland Corporation, which has its executives offices in

8    Denver, Colorado and is engaged in the acquisition, ownership, management and redevelopment

9    of apartment properties.  The Company is the largest owner and operator of apartment properties

10   in the United States.  As of December 31, 2004, the Company owned or managed approximately

11   1500 properties containing approximately 318,152 apartment units located in 47 states.

12       14.    Defendant AIMCO is a Delaware limited partnership.  AIMCO, through its

13   operating divisions and subsidiaries, holds substantially all of the company's assets and manages

14   the daily operations of the Company's business and assets.

15       15.    All references to AIMCO in the remainder of this Complaint shall mean the

16   Company and AIMCO.

17       16.    Defendant NHP is an apartment management company with its principal place of

18   business in Denver, Colorado.  NHP manages many of the communities AIMCO owns, and is a

19   joint employer with AIMCO of many employees at AIMCO's apartment communities, including

20   the Plaintiffs in this action.

21       17.    Plaintiffs are current or former employees of AIMCO and NHP who are or were

22   employed as hourly-paid "Service Technicians" or "Maintenance Supervisors" or "Service

23   Managers," or in other job titles performing similar job duties.  Plaintiffs' job responsibilities

1    included maintaining the condition of the apartment community at which they are or were

2    employed and responding to tenant requests for services.

3        18.    Plaintiffs are or were required periodically to remain "on call" on a 24-hour a day

4    basis to respond to emergency requests for assistance or services from tenants.

5        19.    Plaintiffs Kenneth Campbell, Raymond Alvarado, Russell Austin, David Barrios,

6

7    Leroy Boese, George Bohannon, Edwin Bondoc, Gerver Calderon, Ernesto Cisneros, Mitchell

8    Cobb, Daniel Cohick, Jose Colocho, Terry Crow, Brian Dean, Cecil Elkins, Ramon Estrada,

9    David Geeting, Gregory Goodwin, Earnest Harrell, Bill Hernandez, Jose Hernandez, Joseph

10   Hutton, Sr., Isaias Lopez, Luis Lopez, John Martin, Matthew Martin, Laurin McPhee, Jr., Ason

11   Mingus, Ranferi Miranda Teran, Patrick Moxley, Tony Ornelas, Mick Peachee, Ricardo Perez,

12

13   Amador Perez, Alfredo Pineda, Kevin Price, Alberto Reyes, Michael Schilling, Marco

14   Solorzano, Jason Taylor, Kenneth Terry, Armando Torrez, Thomas Visage, Robert White,

15   Michael Woods, Damian Zentner, and Luis Zermeno are or were employed by AIMCO as

16   Maintenance Personnel at facilities within the state of California.

17   ## **ALLEGATIONS OF THE PLAINTIFFS**

18   **Defendants' Failure To Pay For Time Spent Responding To Emergency Service Calls**

19       20.    Defendants jointly own, operate and manage apartment communities across the

20   United States.  Indeed, AIMCO is the largest owner of apartment communities in the country,

21   owning over 1700 properties nationwide.

22

23       21.    Many of AIMCO's properties are managed by Defendant NHP, and many of the

24   employees who work at these AIMCO properties also are employees of NHP.

25       22.    AIMCO and NHP employ hourly-paid individuals at their apartment

26   communities with the job titles Service Technician, Maintenance Supervisor, and Service

27   Director (collectively, "Maintenance Personnel").

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

23.    The job duties of Maintenance Personnel include, *inter alia*, maintaining the condition of their apartment communities and performing scheduled and unscheduled maintenance and repair work at their facilities.  These duties include tasks such as repairing broken appliances, fixing air conditioning units, fixing plumbing problems, and performing electrical work.  Maintenance Personnel also must prepare vacant apartments to be rented, and some are responsible for maintaining adequate stocks of supplies and dealing with contractors and outside workers.

24.    In addition to the above job duties, on a rotating basis Maintenance Personnel are required to remain "on call," defined as being accessible to respond immediately to emergency requests for services from tenants, and available to arrive at tenants' apartments within twenty (20) minutes or less in response to such requests.

25.    Maintenance Personnel usually are on call for one-week periods occurring once or twice each month, during which they work between approximately 4 p.m. and 8 a.m. Monday through Friday, and twenty-four (24) hours a day over the weekends.

26.    Defendants guarantee prompt service to their tenants who live in their communities, and rely upon their Maintenance Personnel to fulfill those guarantees.

27.    Specifically, Defendants' policy is that when tenants make emergency requests for service at their properties, a member of the Maintenance Personnel staff will arrive at the tenant's apartment to assist the tenant within approximately twenty (20) minutes or less of receiving the tenant's call.

28.    Defendants also guarantee that, under most circumstances, tenant problems will be resolved within 24 hours of the time Defendants are notified of the problem, or the tenant will receive a discount on future rent payments.  This service guarantee is prominently advertised on AIMCO's website.

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

COMPLAINT                                    - 6 -                                    Case No.

29.     This level of service to tenants requires a significant commitment on the part of the Maintenance Personnel working at Defendants' apartment communities.

30.     In order to fulfill their guarantee of prompt service, the Defendants require that, in response to request for emergency service made by tenants, employees who are on call must arrive at the tenant's apartment to provide the requested assistance within twenty (20) minutes or less of when the tenant's call is received.

31.     Specifically, Defendants' service policies and guarantees require that Maintenance Personnel be available twenty-four (24) hours a day on a rotating basis to respond to tenant emergency requests for service, and to work diligently at all times to ensure that tenants are satisfied with their apartment communities and that Defendants live up to their 24-hour satisfaction guarantee.

32.     Beginning in the year 2000, or earlier, and continuing to the present, the Defendants have followed a policy of generally denying payment of overtime wages to its Maintenance Personnel for time spent on call at their facilities and for time spent responding to emergency service requests from tenants (the "no-overtime policy"). This policy was documented in various electronic mail messages from Defendants' upper management to Community Managers in the field.

33.     Exceptions to Defendants' no-overtime policy generally must be approved by a Regional Vice President ("RVP") or higher.

34.     The RVPs generally will not approve exceptions to the no-overtime policy. Rather than approve overtime payments, Defendants state that their employees must take "compensatory time" off work at some later point to compensate for the overtime that was worked.

35.    "Compensatory time" is time off from work during otherwise regularly scheduled work hours.  Defendants' system of compensatory time is illegal under California Labor Code § 204.3, which does not allow compensatory time for employees covered by IWC Wage Order 5 and/or because the policy did not and does not compensate Plaintiffs and putative class members at the correct rate (i.e., one and one-half hours, or more, for each hour of overtime work) and because there is no compensatory time off for hours worked over eight in a day as required by California Labor Code § 510.  It is also illegal under Labor Code § 513, as the "compensatory time" is not pursuant to an employee's written request to make up work time that is or would be lost as a result of a personal obligation of the employee.  Additionally and alternatively, any written requests from an employee for "compensatory time" is encouraged and/or solicited by Defendants.

36.    Defendants knowingly and willfully set staffing levels so low that  Maintenance Personnel's heavy workloads frequently require that they work more than 40 hours in a work week.

37.    These low staffing levels have been caused by several policies employed by the Defendants.

38.    First, throughout the liability period, the defendants have imposed a staffing requirement that permits, at most, only one Maintenance Person to be assigned to its apartment communities for every 100 apartments at the community.  This policy is enforced in such a way that, for example, if an apartment community has 280 apartments, it is still only assigned, at most, two Maintenance Persons rather than three.  In addition, many AIMCO facilities are staffed  more leanly, resulting in even greater pressure on the Maintenance Personnel.

39.    Second, upon information and belief, beginning in approximately the year 2000, the Defendants required that each apartment community be staffed "5% out of the box" at all

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

COMPLAINT                                    - 8 -                                Case No.

1    times. This policy meant that apartment communities would be provided with 5% less staff than

2    was typically employed by other apartment management companies.

3        40.    Third, in approximately 2001, the Defendants adopted an initiative called

4    "Project Century," pursuant to which thousands of their employees were laid off, including most

5    of the grounds keeping and housekeeping staffs.

6

7        41.    Each of these staffing policies separately, as well as taken together, caused the

8    remaining apartment community staff to be very busy at all times, and deprived them of any

9    flexibility in the schedules in which they worked.

10       42.    Despite these diminished staffing levels and the enhanced workloads they

11   imposed on Maintenance Personnel, the Defendants insisted that when Maintenance Personnel

12   performed overtime work, they receive compensatory time rather than be paid overtime wages.

13

14       43.    The Defendants were informed repeatedly by Community Managers and

15   Maintenance Supervisors across the country, during both regional meetings attended by RVPs

16   and on other occasions, that Maintenance Personnel lacked the time to use the compensatory

17   time they earned due to large and inflexible work loads.

18       44.    Notwithstanding repeated notice that Maintenance Personnel who performed

19   overtime work were unable to use the compensatory time offered in lieu of overtime wages, the

20   Defendants persisted in requiring advance approval before overtime wages were paid and

21   directing managers to require that employees be provided compensatory time in lieu of overtime

22   wages.

23

24       45.    In addition, in an effort to conceal the amount of overtime work performed,

25   managers employed by the Defendants have directed Maintenance Personnel to record on their

26   time sheets less time than they actually worked, and have altered time sheets completed by

27   Maintenance Personnel to reduce the number of hours worked that are recorded.

28

46.    These alterations to Maintenance Personnel timesheets had the purpose and effect of making it appear that Maintenance Personnel had not worked overtime when in fact they had done so.

47.    The compensation policies and practices set forth above constitute a willful, knowing, and intentional violation of the Fair Labor Standards Act.

**Defendants' Failure To Pay For Time Spent Waiting For Emergency Service Calls**

48.    Defendants require that at least one member of the Maintenance Personnel staff be "on-call" during all hours when the apartment community office is closed and no Maintenance Personnel are on duty.

49.    On call service usually extends from 4 p.m. until 8 a.m. Monday through Friday, and during the entire weekend.

50.    When designated as the employee "on-call", Maintenance Personnel are required to be available to immediately respond to emergency service requests from tenants. As a result, while Maintenance Personnel serve on call they are typically required to carry a beeper or cellular phone at all times.

51.    Tenants are provided a telephone number that they may call in order to reach the Maintenance Person serving on call at any time of the day or night. Typically tenants either call an answering service that pages the Maintenance Person on call or call directly to the pager or cellular phone carried by the Maintenance Person on call.

52.    The Defendants require that, should a tenant call with an emergency (such as a leak or a lockout), then the employee on call will arrive at the tenant's apartment to address the problem within a short, fixed amount of time after the call is received. The employee on call is typically expected to be at the tenant's apartment within less than 20 minutes after the call is received.

53.     In larger apartment communities, Maintenance Personnel on call usually receive three to five emergency service requests from tenants each night, and more calls on weekends and during seasons when tenants use heating and cooling systems heavily.  In some smaller apartment communities, Maintenance Personnel receive calls less frequently, but most employees still receive at least 5 to 10 emergency service calls each week during which they are on call.

54.     The time required to address tenant emergency service requests ranges in length from about twenty (20) to thirty (30) minutes for emergencies that can be readily addressed, such as lockouts, to eight to ten hours if the service need is onerous or requires substantial repairs, such as a major leak.

55.     As a result of the Defendants' requirement that Maintenance Personnel respond so promptly to emergency service requests while they are on call, the Maintenance Personnel are severely limited in their ability to pursue activities unrelated to their employment while they are on call.  Specifically, Maintenance Personnel often cannot assist in child care, cannot attend religious services, cannot go out to dinner, cannot go to the grocery store, cannot attend movies or plays, and cannot visit their families while they are on call.

56.     While on call, Maintenance Personnel are often unable to sleep throughout the night. Many Maintenance Personnel receive less than 5 hours of sleep at night while on call.

57.     Maintenance Personnel are subject to discipline, up to and including termination, for failing to respond promptly to emergency service requests lodged while they are on call.

58.     The severe restrictions imposed on the personal lives and activities of Maintenance Personnel when they are on call mean that, while they serve on call, the Defendants effectively have engaged Maintenance Personnel to wait for emergency service calls

COMPLAINT                                    - 11 -                              Case No.

from tenants.  Accordingly, the Defendants should have paid the Maintenance Personnel their hourly rate, or time and a half their hourly rate for overtime hours, for all time spent on call.

59.    The Defendants have been fully aware that service on call places severe restrictions on the personal lives of their Maintenance Personnel.  The Defendants are aware of the prompt response times that they have required of their Maintenance Personnel and track the number of emergency requests received from tenants at each property, as well as the time spent responding to those requests.

60.    Maintenance Personnel are and were on call for the benefit of AIMCO, and the restrictions on the activities in which Maintenance Personnel could be engaged during on-call time are and were for the benefit of AIMCO.

61.    Nonetheless, AIMCO has a corporate policy, implemented nationwide and throughout the state of California, of refusing to pay Maintenance Personnel for the time they spend on call waiting to receive emergency service requests.

62.    This compensation policy and practice constitutes a knowing, intentional, and willful violation of the Fair Labor Standards Act.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

I.    Determine the damages sustained by the Plaintiffs as a result of the Defendants' willful and intentional violations of 29 U.S.C. § 207(a), and award such back pay against AIMCO and in favor of Plaintiffs plus such pre-judgment interest as may be allowed by law; and

II.    Award Plaintiffs their costs and disbursements of this suit, including, without limitation, reasonable attorneys', accountants', investigators', and experts' fees; and

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

COMPLAINT                                    - 12 -                                    Case No.

III.    Grant Plaintiffs such other and further relief, including, without limitation, injunctive relief where appropriate, as the Court may deem just and proper or that is allowed under any Federal law violated by the Defendants' conduct described herein.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

Dated: July 16, 2007

Teresa Demchak, CA Bar No. 123989
Laura L. Ho, CA Bar No. 173179
GOLDSTEIN, DEMCHAK, BALLER,
    BORGEN & DARDARIAN
300 Lakeside Drive., Suite 1000
Oakland, CA 94612
Tel.: (510) 763-9800
Fax: (510) 835-1417

Joseph M. Sellers (D.C. Bar No. 318410)
Charles E. Tompkins (D.C. Bar No. 459854)
Llezlie L. Green (D.C. Bar No. 484051)
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower - Suite 500
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

Stephen M. Pavsner
Jay P. Holland
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel.: (301) 220-2200
Fax: (301) 220-1214

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

COMPLAINT                              - 13 -                              Case No.