# EXHIBIT B

1

Teresa Demchak, CA Bar No. 123989
2   Laura L. Ho, CA Bar No. 173179
GOLDSTEIN, DEMCHAK, BALLER,
3       BORGEN & DARDARIAN
300 Lakeside Drive., Suite 1000
4   Oakland, CA 94612
(510) 763-9800 (telephone)
5   (510) 835-1417 (telefax)

6   Joseph M. Sellers
Charles E. Tompkins
7   Llezlie L. Green
COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC
8   1100 New York Avenue, N.W.
Suite 500, West Tower
9   Washington, DC 20005
(202) 408-4600 (telephone)
10  (202) 408-4699 (telefax)

11  Attorneys for Plaintiffs

12                      UNITED STATES DISTRICT COURT

13                      NORTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| KENNITH CAMPBELL , RAYMOND ALVARADO, RUSSELL AUSTIN, DAVID BARRIOS, LEROY BOESE, GEORGE BOHANNON, EDWIN BONDOC, GERVER CALDERON, ERNESTO CISNEROS, MITCHELL COBB, DANIEL COHICK, JOSE COLOCHO, TERRY CROW, BRIAN DEAN, CECIL ELKINS, RAMON ESTRADA, DAVID GEETING, GREGORY GOODWIN, EARNEST HARRELL, BILL HERNANDEZ, JOSE HERNANDEZ, JOSEPH HUTTON, SR., ISAIAS LOPEZ, LUIS LOPEZ, JOHN MARTIN, MATTHEW MARTIN, LAURIN MCPHEE, JR., ASON MINGUS, PATRICK MOXLEY, TONY ORNELAS, MIKE PEACHEE, RICARDO PEREZ, AMADOR PEREZ, ALFREDO PINEDA, KEVIN PRICE, ALBERTO REYES, MICHAEL SCHILLING, MARCO SOLORZANO, JASON TAYLOR, RANFERI MIRANDA TERAN, KENNETH TERRY, ARMANDO TORREZ, THOMAS VISAGE, ROBERT WHITE, MICHAEL WOODS, DAMIAN ZENTNER, LUIS ZERMENO, | Civil Action No. 3:07-cv-03640 **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | |
| v. | |
| APARTMENT INVESTMENT AND MANAGEMENT COMPANY, AIMCO PROPERTIES, L.P., NHP MANAGEMENT COMPANY, AND AIMCO / BETHESDA HOLDINGS, INC., | |

Defendants.

## SUMMARY OF ALLEGATIONS[1]

1.    Defendants Apartment Investment and Management Company (The "Company"), AIMCO Properties, L.P. ("AIMCO"), NHP Management Company, and AIMCO / Bethesda Holdings, Inc. (collectively, "Defendants"), beginning in at least the year 1999 and continuing until the present, have willfully violated federal law and applicable state laws by refusing to pay Plaintiffs, as well as everyone else employed by Defendants as hourly-paid "Service Technicians"; "Maintenance Supervisors" and "Service Managers," for all of the hours they work, and by refusing to pay overtime for all hours worked over forty (40) hours per week.

2.    This denial of legally required overtime pay has been accomplished through two separate practices, implemented throughout California.

3.    First, Defendants require that employees who work overtime take "compensatory time" on future scheduled workdays rather than be paid overtime.  Defendants implemented this compensatory-time off policy while simultaneously setting staffing levels at their apartment communities at such low levels that, as a practical matter, employees are wholly unable to take off the "compensatory time" that they are owed.  The predictable – and intended – result is that AIMCO's Service Technicians, Maintenance Supervisors, and Service Managers are not paid overtime compensation when they work more than eight hours a day or forty (40) hours a week, nor do they receive the compensatory time promised them.

4.    Second, Defendants refuse to pay employees who are "on call" at its apartment communities for the time they spend waiting for calls.  These employees must be available twenty-four (24) hours a day to respond to emergency requests for services from tenants, and must arrive at tenants' apartment between 5 and 20 minutes of tenants' requests for service.  In

---

[1]  An identical action brought on behalf of Joseph Dominguez and Aldo Cruz is present before this Court (*Dominguez v. AIMCO*, Civ. No. 07-cv-03245).  The defendants have indicated they would oppose a motion to amend *Dominguez v. AIMCO* to include the additional plaintiffs.  As such, the plaintiffs file this separate complaint, in an abundance of caution, in order to preserve the claims of the plaintiffs listed herein.

1    many cases these employees' lives are severely restricted while they are on call.  Yet Defendants

2    do not pay employees for this waiting time.

3        5.    Both of these practices are knowing, willful, and intentional violations of the Fair

4    Labor Standards Act, 29 U.S.C. §§ 207 *et seq.* ("FLSA").

5                        **JURISDICTION AND VENUE**

6        6.    This Court has subject matter jurisdiction over the Claims for Relief I, II, and III

7    seeking relief for violations of the FLSA, pursuant to 28 U.S.C. § 1331.

8        7.    Defendants regularly transact business in this District and are therefore subject to

9    personal jurisdiction here.

10       8.    AIMCO and/or AIMCO / Bethesda Holdings, Inc. own and operate apartment

11   complexes in this District and throughout the state of California.

12       9.    AIMCO / Bethesda Holdings, Inc. and/or AIMCO also manage apartment

13   communities and employ employees in this District and throughout the state of California.

14   AIMCO / Bethesda Holdings, Inc.  was an employer of Plaintiffs in this District and throughout

15   the state of California.

16       10.    Upon information and belief, AIMCO was a joint employer, with AIMCO /

17   Bethesda Holdings, Inc., of Plaintiffs in this District and throughout the state of California.

18       11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c), because both

19   AIMCO and AIMCO / Bethesda Holdings, Inc.  are subject to personal jurisdiction in this

20   District.  In addition, Plaintiffs were employed at a facility owned and operated by AIMCO

21   and/or AIMCO / Bethesda Holdings, Inc. in this district, and were employed by AIMCO /

22   Bethesda Holdings, Inc.  and AIMCO in this district, such that the unlawful acts of which

23   Plaintiffs complain took place in this District and throughout the state of California.

24       12.    AIMCO and/or AIMCO / Bethesda Holdings, Inc. also owns, operates and

25   manages apartment facilities, and employs employees in this District and throughout the state of

26   California.

27

28

**PARTIES**

1

2       13.     The Company is a Maryland Corporation, which has its executives offices in

3   Denver, Colorado and is engaged in the acquisition, ownership, management and redevelopment

4   of apartment properties.  The Company is the largest owner and operator of apartment properties

5   in the United States.  As of December 31, 2004, the Company owned or managed approximately

6   1500 properties containing approximately 318,152 apartment units located in 47 states.

7       14.     Defendant AIMCO is a Delaware limited partnership.  AIMCO, through its

8   operating divisions and subsidiaries, holds substantially all of the Company's assets and

9   manages the daily operations of the Company's business and assets.

10      15.     All references to AIMCO in the remainder of this Complaint shall mean the

11  Company and AIMCO.

12      16.     Upon information and belief, Defendant NHP Management Company has merged

13  with Defendant AIMCO / Bethesda Holdings, Inc.

14      17.     All references to Defendant AIMCO / Bethesda Holdings, Inc. in the remainder

15  of this Complaint shall mean NHP Management Company and AIMCO / Bethesda Holdings,

16  Inc., collectively.

17      18.     Defendant AIMCO / Bethesda Holdings, Inc.  is an apartment management

18  company incorporated in Delaware with its principal place of business in Denver, Colorado.

19  AIMCO / Bethesda Holdings, Inc. manages many of the communities AIMCO owns, and is a

20  joint employer with AIMCO of many employees at AIMCO's apartment communities, including

21  the Plaintiffs in this action.

22      19.     Plaintiffs are current or former employees of AIMCO and AIMCO / Bethesda

23  Holdings, Inc. who are or were employed as hourly-paid "Service Technicians" or "Maintenance

24  Supervisors" or "Service Managers," or in other job titles performing similar job duties

25  (collectively "Maintenance Personnel").  Plaintiffs' job responsibilities included maintaining the

26  condition of the apartment community at which they are or were employed and responding to

27  tenant requests for services.

28

20.     Plaintiffs are or were required periodically to remain "on call" on a 24-hour a day basis to respond to emergency requests for assistance or services from tenants.

21.     Plaintiffs Kenneth Campbell, Raymond Alvarado, Russell Austin, David Barrios, Leroy Boese, George Bohannon, Edwin Bondoc, Gerver Calderon, Ernesto Cisneros, Mitchell Cobb, Daniel Cohick, Jose Colocho, Terry Crow, Brian Dean, Cecil Elkins, Ramon Estrada, David Geeting, Gregory Goodwin, Earnest Harrell, Bill Hernandez, Jose Hernandez, Joseph Hutton, Sr., Isaias Lopez, Luis Lopez, John Martin, Matthew Martin, Laurin McPhee, Jr., Ason Mingus, Patrick Moxley, Tony Ornelas, Mick Peachee, Ricardo Perez, Amador Perez, Alfredo Pineda, Kevin Price, Alberto Reyes, Michael Schilling, Marco Solorzano, Jason Taylor, Ranferi Miranda Teran,  Kenneth Terry, Armando Torrez, Thomas Visage, Robert White, Michael Woods, Damian Zentner, and Luis Zermeno are or were employed by AIMCO as Maintenance Personnel at facilities within the state of California.

## ALLEGATIONS OF THE PLAINTIFFS

### Defendants' Failure To Pay For Time Spent Responding To Emergency Service Calls

22.     Defendants jointly own, operate and manage apartment communities across the United States.  Indeed, AIMCO is the largest owner of apartment communities in the country, owning over 1700 properties nationwide.

23.     Many of AIMCO's properties are managed by Defendant AIMCO / Bethesda Holdings, Inc., and many of the employees who work at these AIMCO properties also are employees of AIMCO / Bethesda Holdings, Inc..

24.     AIMCO and AIMCO / Bethesda Holdings, Inc.  employ hourly-paid individuals at their apartment communities with the job titles Service Technician, Maintenance Supervisor, and Service Director (collectively, "Maintenance Personnel").

25.     The job duties of Maintenance Personnel include, *inter alia*, maintaining the condition of their apartment communities and performing scheduled and unscheduled maintenance and repair work at their facilities.  These duties include tasks such as repairing broken appliances, fixing air conditioning units, fixing plumbing problems, and performing electrical work.  Maintenance Personnel also must prepare vacant apartments to be rented, and

1   some are responsible for maintaining adequate stocks of supplies and dealing with contractors

2   and outside workers.

3       26.     In addition to the above job duties, on a rotating basis Maintenance Personnel are

4   required to remain "on call," defined as being accessible to respond immediately to emergency

5   requests for services from tenants, and available to arrive at tenants' apartments within twenty

6   (20) minutes or less in response to such requests.

7       27.     Maintenance Personnel usually are on call for one-week periods occurring once

8   or twice each month, during which they work between approximately 4 p.m. and 8 a.m. Monday

9   through Friday, and twenty-four (24) hours a day over the weekends.

10      28.     Defendants guarantee prompt service to their tenants who live in their

11  communities, and rely upon their Maintenance Personnel to fulfill those guarantees.

12      29.     Specifically, Defendants' policy is that when tenants make emergency requests

13  for service at their properties, a member of the Maintenance Personnel staff will arrive at the

14  tenant's apartment to assist the tenant within approximately twenty (20) minutes or less of

15  receiving the tenant's call.

16      30.     Defendants also guarantee that, under most circumstances, tenant problems will

17  be resolved within 24 hours of the time Defendants are notified of the problem, or the tenant will

18  receive a discount on future rent payments.  This service guarantee is prominently advertised on

19  AIMCO's website.

20      31.     This level of service to tenants requires a significant commitment on the part of

21  the Maintenance Personnel working at Defendants' apartment communities.

22      32.     In order to fulfill their guarantee of prompt service, the Defendants require that,

23  in response to request for emergency service made by tenants, employees who are on call must

24  arrive at the tenant's apartment to provide the requested assistance within twenty (20) minutes or

25  less of when the tenant's call is received.

26      33.     Specifically, Defendants' service policies and guarantees require that

27  Maintenance Personnel be available twenty-four (24) hours a day on a rotating basis to respond

28  to tenant emergency requests for service, and to work diligently at all times to ensure that

1    tenants are satisfied with their apartment communities and that Defendants live up to their 24-

2    hour satisfaction guarantee.

3        34.    Beginning in the year 2000, or earlier, and continuing to the present, the

4    Defendants have followed a policy of generally denying payment of overtime wages to its

5    Maintenance Personnel for time spent on call at their facilities and for time spent responding to

6    emergency service requests from tenants (the "no-overtime policy").  This policy was

7    documented in various electronic mail messages from Defendants' upper management to

8    Community Managers in the field.

9        35.    Exceptions to Defendants' no-overtime policy generally must be approved by a

10   Regional Vice President ("RVP") or higher.

11       36.    The RVPs generally will not approve exceptions to the no-overtime policy.  Rather

12   than approve overtime payments, Defendants state that their employees must take

13   "compensatory time" off work at some later point to compensate for the overtime that was

14   worked.

15       37.    "Compensatory time" is time off from work during otherwise regularly scheduled

16   work hours.  Defendants' system of compensatory time is illegal under California Labor Code

17   § 204.3, which does not allow compensatory time for employees covered by IWC Wage Order 5

18   and/or because the policy did not and does not compensate Plaintiffs and putative class members

19   at the correct rate (i.e., one and one-half hours, or more, for each hour of overtime work) and

20   because there is no compensatory time off for hours worked over eight in a day as required by

21   California Labor Code § 510.  It is also illegal under Labor Code § 513, as the "compensatory

22   time" is not pursuant to an employee's written request to make up work time that is or would be

23   lost as a result of a personal obligation of the employee.  Additionally and alternatively, any

24   written requests from an employee for "compensatory time" is encouraged and/or solicited by

25   Defendants.

26       38.    Defendants knowingly and willfully set staffing levels so low that  Maintenance

27   Personnel's heavy workloads frequently require that they work more than 40 hours in a work

28   week.

39.    These low staffing levels have been caused by several policies employed by the Defendants.

40.    First, throughout the liability period, the defendants have imposed a staffing requirement that permits, at most, only one Maintenance Person to be assigned to its apartment communities for every 100 apartments at the community.  This policy is enforced in such a way that, for example, if an apartment community has 280 apartments, it is still only assigned, at most, two Maintenance Persons rather than three.  In addition, many AIMCO facilities are staffed more leanly, resulting in even greater pressure on the Maintenance Personnel.

41.    Second, upon information and belief, beginning in approximately the year 2000, the Defendants required that each apartment community be staffed "5% out of the box" at all times.  This policy meant that apartment communities would be provided with 5% less staff than was typically employed by other apartment management companies.

42.    Third, in approximately 2001, the Defendants adopted an initiative called "Project Century," pursuant to which thousands of their employees were laid off, including most of the grounds keeping and housekeeping staffs.

43.    Each of these staffing policies separately, as well as taken together, caused the remaining apartment community staff to be very busy at all times, and deprived them of any flexibility in the schedules in which they worked.

44.    Despite these diminished staffing levels and the enhanced workloads they imposed on Maintenance Personnel, the Defendants insisted that when Maintenance Personnel performed overtime work, they receive compensatory time rather than be paid overtime wages.

45.    The Defendants were informed repeatedly by Community Managers and Maintenance Supervisors across the country, during both regional meetings attended by RVPs and on other occasions, that Maintenance Personnel lacked the time to use the compensatory time they earned due to large and inflexible work loads.

46.    Notwithstanding repeated notice that Maintenance Personnel who performed overtime work were unable to use the compensatory time offered in lieu of overtime wages, the Defendants persisted in requiring advance approval before overtime wages were paid and

1    directing managers to require that employees be provided compensatory time in lieu of overtime

2    wages.

3        47.    In addition, in an effort to conceal the amount of overtime work performed,

4    managers employed by the Defendants have directed Maintenance Personnel to record on their

5    time sheets less time than they actually worked, and have altered time sheets completed by

6    Maintenance Personnel to reduce the number of hours worked that are recorded.

7        48.    These alterations to Maintenance Personnel timesheets had the purpose and effect

8    of making it appear that Maintenance Personnel had not worked overtime when in fact they had

9    done so.

10        49.    The compensation policies and practices set forth above constitute a willful,

11    knowing, and intentional violation of the Fair Labor Standards Act.

12    **Defendants' Failure To Pay For Time Spent Waiting For Emergency Service Calls**

13        50.    Defendants require that at least one member of the  Maintenance Personnel staff

14    be "on-call" during all hours when the apartment community office is closed and no

15    Maintenance Personnel are on duty.

16        51.    On call service usually extends from 4 p.m. until 8 a.m. Monday through Friday,

17    and during the entire weekend.

18        52.    When designated as the employee "on-call", Maintenance Personnel are required

19    to be available to immediately respond to emergency service requests from tenants.  As a result,

20    while Maintenance Personnel serve on call they are typically required to carry a beeper or

21    cellular phone at all times.

22        53.    Tenants are provided a telephone number that they may call in order to reach the

23    Maintenance Person serving on call at any time of the day or night.  Typically tenants either call

24    an answering service that pages the Maintenance Person on call or call directly to the pager or

25    cellular phone carried by the Maintenance Person on call.

26        54.    The Defendants require that, should a tenant call with an emergency (such as a

27    leak or a lockout), then the employee on call will arrive at the tenant's apartment to address the

28    problem within a short, fixed amount of time after the call is received.  The employee on call is

1    typically expected to be at the tenant's apartment within less than 20 minutes after the call is

2    received.

3        55.    In larger apartment communities, Maintenance Personnel on call usually receive

4    three to five emergency service requests from tenants each night, and more calls on weekends

5    and during seasons when tenants use heating and cooling systems heavily.  In some smaller

6    apartment communities, Maintenance Personnel receive calls less frequently, but most

7    employees still receive at least 5 to 10 emergency service calls each week during which they are

8    on call.

9        56.    The time required to address tenant emergency service requests ranges in length

10    from about twenty (20) to thirty (30) minutes for emergencies that can be readily addressed,

11    such as lockouts, to eight to ten hours if the service need is onerous or requires substantial

12    repairs, such as a major leak.

13        57.    As a result of the Defendants' requirement that Maintenance Personnel respond

14    so promptly to emergency service requests while they are on call, the Maintenance Personnel are

15    severely limited in their ability to pursue activities unrelated to their employment while they are

16    on call.  Specifically, Maintenance Personnel often cannot assist in child care, cannot attend

17    religious services, cannot go out to dinner, cannot go to the grocery store, cannot attend movies

18    or plays, and cannot visit their families while they are on call.

19        58.    While on call, Maintenance Personnel are often unable to sleep throughout the

20    night. Many Maintenance Personnel receive less than 5 hours of sleep at night while on call.

21        59.    Maintenance Personnel are subject to discipline, up to and including termination,

22    for failing to respond promptly to emergency service requests lodged while they are on call.

23        60.    The severe restrictions imposed on the personal lives and activities of

24    Maintenance Personnel when they are on call mean that, while they serve on call, the

25    Defendants effectively have engaged Maintenance Personnel to wait for emergency service calls

26    from tenants.  Accordingly, the Defendants should have paid the Maintenance Personnel their

27    hourly rate, or time and a half their hourly rate for overtime hours, for all time spent on call.

28

1    61.    The Defendants have been fully aware that service on call places severe

2  restrictions on the personal lives of their Maintenance Personnel.  The Defendants are aware of

3  the prompt response times that they have required of their Maintenance Personnel and track the

4  number of emergency requests received from tenants at each property, as well as the time spent

5  responding to those requests.

6    62.    Maintenance Personnel are and were on call for the benefit of AIMCO, and the

7  restrictions on the activities in which Maintenance Personnel could be engaged during on-call

8  time are and were for the benefit of AIMCO.

9    63.    Nonetheless, AIMCO has a corporate policy, implemented nationwide and

10  throughout the state of California, of refusing to pay Maintenance Personnel for the time they

11  spend on call waiting to receive emergency service requests.

12    64.    This compensation policy and practice constitutes a knowing, intentional, and

13  willful violation of the Fair Labor Standards Act.

14  **CLAIMS FOR RELIEF**

15    WHEREFORE, Plaintiffs respectfully request that the Court:

16    I.    Determine the damages sustained by the Plaintiffs as a result of the Defendants'

17    willful and intentional violations of 29 U.S.C. § 207(a), and award such back pay

18    against AIMCO and in favor of Plaintiffs plus such pre-judgment interest as may

19    be allowed by law; and

20    II.    Award Plaintiffs their costs and disbursements of this suit, including, without

21    limitation, reasonable attorneys', accountants', investigators', and experts' fees;

22    and

23    III.    Grant Plaintiffs such other and further relief, including, without limitation,

24    injunctive relief where appropriate, as the Court may deem just and proper or that

25    is allowed under any Federal law violated by the Defendants' conduct described

26    herein.

27

28

1     **PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**.

2                                           Respectfully submitted,

3     Dated: _____     _____

4                                           Laura L. Ho, CA Bar No. 173179
                                          Teresa Demchak, CA Bar No. 123989
5                                           GOLDSTEIN, DEMCHAK, BALLER,
                                          BORGEN & DARDARIAN
6                                           300 Lakeside Drive., Suite 1000
                                          Oakland, CA 94612
7                                           Tel.: (510) 763-9800; Fax: (510) 835-1417

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

10517-1 FIRST AMENDED COMPLAINT        - 12 -        Case No. 3:07-CV-03640